IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON L. FAKE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA COURT OF COMMON | : | NO.  16-3893 |
| PLEAS, et al. | : | |

## MEMORANDUM

PAPPERT, J.                                                    OCTOBER  17 , 2016

Currently before the Court is plaintiff Brandon L. Fake's amended complaint based on an alleged conspiracy in the Philadelphia courts associated with contentious divorce, support and custody proceedings between plaintiff and his ex-wife that began in 2004.  For the following reasons, the Court will dismiss the amended complaint.

## I.      FACTS AND PROCEDURAL HISTORY

In his initial complaint, plaintiff sued forty-four defendants alleging primarily that those defendants conspired to manipulate domestic relations proceedings in Philadelphia in favor of plaintiff's ex-wife, Dianne Fake, based on Ms. Fake's ties to Under Secretary of the Army Patrick Murphy and his family.  Plaintiff also alleged that due to Dianne Fake's relationship with the Murphy family, she and Corinna Fake—who the amended complaint clarifies is Dianne's daughter—were treated leniently by the criminal justice system after having been charged with certain crimes.  The complaint also indicated that certain municipal defendants failed to protect minor children, which the Court understood to be an attempt by plaintiff to raise claims on behalf of his children.  The Court construed the complaint to raise constitutional claims under 42 U.S.C. § 1983 and also understood plaintiff to be raising claims under various criminal statutes.

After granting plaintiff leave to proceed *in forma pauperis*, the Court dismissed the complaint in part as frivolous and in part for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).  The dismissal was based on the following grounds: (1) plaintiff lacked standing to pursue any claims premised on harm to his children; (2) any claims based on criminal statutes were frivolous because criminal statutes generally do not give rise to civil liability and the Court cannot direct the filing of criminal charges; (3) claims based on alleged defects in the prosecutions of Dianne Fake and Corinna Fake were frivolous because those claims did not implicate plaintiff's constitutional rights; (4) most of plaintiff's claims related to the domestic relations proceeding were barred by the two-year statute of limitations; (5) plaintiff's claims based on events that occurred in the course of the domestic relations proceedings were premised on conclusory allegations that were insufficient to state a claim; (6) the Philadelphia Court of Common Pleas, which was identified as a defendant, was entitled to Eleventh Amendment immunity and is not a person for purposes of § 1983; (7) departments of the City of Philadelphia could not be sued separately from the City; and (8) to the extent plaintiff was suing state judges, the judges were entitled to absolute immunity for acts taken in their judicial capacity.  Plaintiff was given leave to file an amended complaint.

Plaintiff filed an amended complaint naming the following twenty-eight defendants, many of whom are judges or special masters who presided over the domestic relations proceeding in Philadelphia: (1) Philadelphia Court of Common Pleas; (2) City of Philadelphia; (3) Kevin M. Dougherty; (4) Margaret T. Murphy; (5) Holly J. Ford; (6) Joel S. Johnson; (7) Robert J. Matthews; (8) Maria McLaughlin; (9) Dianne J. Fake; (10) Patrick J. Murphy; (11) Jack Murphy; (12) Marge Murphy; (13) Mary Clark; (14) John Clark; (15) Katie Gallen; (16) Daniel Sulman; (17) Anita N. Botchway; (18) William Ketterlinus; (19) Harry Frank; (20) Allyson Totaro; (21)

Stephen M. Older; (22) the Philadelphia Department of Human Services (DHS); (23) Jessica S.

Shapiro; (24) Gary D. Williams; (25) Jonathan Houlon; (26) Courtney Norella; (27) Philadelphia

Police Department 8th District; and (28) Officer Marafino.  As with the initial complaint, the

amended complaint is primarily predicated on allegations that Dianne Fake used her close

relationship with Under Secretary Murphy and his family to rig the court against plaintiff.

    Plaintiff alleges that Mary Clark and Dianne Fake née Clark lived next door to the

Murphy family in Philadelphia for approximately two decades, and that the two families

sustained a close relationship.  At some point before his relationship with Ms. Fake deteriorated,

plaintiff attended a Murphy family wedding and became aware that Under Secretary Murphy

was friendly with judges in Philadelphia.  John Clark, who appears to be Dianne Fake's father,

allegedly stated that the groom who was marrying into the Murphy family "better hope that they

never get a divorce."  (Am. Compl. at 4.)

    Plaintiff also alleges that Under Secretary Murphy used to work in the Philadelphia

District Attorney's office with Kevin Dougherty and Maria McLaughlin, both of whom went on

to become judges.  Additionally, other members of the Murphy family served as judges on the

family court, worked for judges in Philadelphia, and were employed by the local and state

governments.  Both Dianne Fake and John Clark allegedly told plaintiff that "if they ever had

any legal trouble all they had to do was go to Jack [Murphy]," who was a Sargent with the

Philadelphia Police Department in the 8th District.  (Am. Compl. at 5.)

    Between February and May of 2004, plaintiff initiated divorce, custody and child support

proceedings against Dianne Fake in Monroe County.  It appears that in connection with those

proceedings, Mary Clark was given primary custody of the couple's children in Philadelphia,

while plaintiff shared legal custody and was given partial physical custody.  In April of 2004,

Ms. Fake filed for spousal support in the Family Division of the Philadelphia Court of Common Pleas even though, according to plaintiff, venue was improper in Philadelphia.  Plaintiff alleges that his ex-wife initiated that legal action "with the full knowledge and understanding that the Murphy's [sic] family and close friends would act under color of law to abuse and violate the Plaintiff's civil rights, Constitutional rights and rules of civil procedure." (Am. Compl. at 6.)

The amended complaint describes events that occurred in the course of the Philadelphia litigation that plaintiff believes are evidence the proceedings were rigged against him.  Master Daniel Sulman, who was assigned to the support matter, declined to transfer the proceedings to Monroe County over plaintiff's objections.  In 2005, Master Anita Botchway held a modification hearing, which plaintiff attended via telephone.  After the hearing, Botchway did not hang up the phone.  Accordingly, plaintiff could hear that Sulman entered the room, discussed the matter with Botchway, and advised her on the matter.  "The name Murphy was mentioned." (Am. Compl. at 8.)  Botchway subsequently issued an order that plaintiff contends was contrary to the evidence because it inflated his income.

Between 2004 and 2006, plaintiff appears to have been held in contempt, arrested on more than one occasion, and had his license seized as a result of decisions by Judge Joel Johnson.  Plaintiff alleges that in the course of one arrest in 2005, the police officers who arrested him subjected him to excessive force and stole $100 from him.  While presiding over the case in 2007, Judge Robert J. Mathews allegedly "verbally threatene[ed], indimidate[d] and coerce[d]" plaintiff by discriminating against him and "wrongfully dismissing exceptions that were filed timely." (Am. Compl. at 12 ¶ 30.)  Based on those and several other judicial rulings throughout the litigation, including the rescheduling of hearings in the matter, plaintiff alleges that the state court treated him unfairly and unconstitutionally.

4

In 2007 and 2008, Plaintiff wrote letters to Judge Kevin Dougherty in his capacity as Administrative Judge, seeking to have him investigate the manner in which the case was handled.  Dougherty forwarded at least one letter to Judge Margaret T. Murphy.  Plaintiff did not receive any additional response.  Plaintiff adds that he saw Judge Dougherty and Under Secretary Murphy "conversing in the hallway of the Court as [he] was led out of [Judge] Johnson's courtroom in handcuffs on or about May 9, 2006."  (Am. Compl. at 20.)

In 2012, plaintiff briefly reconciled with Ms. Fake for approximately one year.  He alleges that between June and December of 2012, he "discovered much disturbing information about the corruption and Murphy's role in the past events," but he does not elaborate on what he allegedly learned.  (Am. Compl. at 21.)  In 2013, Dianne Fake and Corinna Fake were criminally charged in the Philadelphia courts, allegedly in connection with a plot to kidnap Corinna Fake's daughter.  Plaintiff indicates that the charges were dropped after seven continuances, which he believes is evidence that the courts were rigged in their favor.  Plaintiff adds that "Mary and/or John Clark contacted Patrick J. Murphy" on the date the Fakes were charged and that Murphy allegedly "contacted Kevin M. Dougherty and/or Margaret T. Murphy to obstruct justice and they did."  (*Id.* at 22.)  The complaint does not elaborate on that allegation.

Activity resumed in the contentious domestic relations proceeding in early 2014.  As with the prior years of litigation, plaintiff believes the court intentionally delayed hearing motions or producing transcripts, canceled or rescheduled hearings in violation of his rights, and discriminated and retaliated against him.  In December of 2014, Judge William Ketterlinus issued a child support order to Ms. Fake that plaintiff believes is unlawful.  Both parties filed exceptions, although Dianne Fake withdrew hers and then was permitted to refile them on the same day.  Plaintiff alleges that it "appears that ex-parte communications are in the file" and that

"[s]pecial treatment [was] given to Ms. Fake and she has conspired with the Court in secret correspondence," but he does not describe the nature of the alleged ex-parte communications or correspondence.  (Am. Compl. at 24-25, ¶ 14.)  It appears that Judge Holly Ford held a hearing on the exceptions and ruled against plaintiff.

Plaintiff appealed Judge Ford's order to the Superior Court.  Shortly after he filed his amended complaint in the instant civil action, the Superior Court affirmed the Court of Common Pleas.  *See Fake v. Fake*, 2192 EDA 2015 (Pa. Super. Ct.).  While the appeal was pending, the support proceedings continued in the Court of Common Pleas.  The various judges and special masters assigned to the case repeatedly ruled against plaintiff, seized certain funds from him in connection with their rulings, prepared opinions that plaintiff believes are incorrect, and ordered plaintiff arrested and detained.

While the case was proceeding, plaintiff's two daughters allegedly contacted him "for help to remove them from the dangerous environment that they have been living in" with Dianne Fake and Corinna Fake.  (Am. Compl. at 32.)  Plaintiff contacted DHS and the Philadelphia Police Department about incidents that took place in late 2015 and early 2016.  According to plaintiff, those "agencies acted with gross negligence and refused to provide [him] with any documentation regarding his children and refused to take appropriate actions to protect the welfare of [his] children," which he believes is evidence that "the corruption has also infected [those agencies]."  (*Id.*)

Plaintiff further alleges that Dianne Fake conspired with Officer Marafino, presumably of the Philadelphia Police Department, who "acted outside of his jurisdiction by contacting [plaintiff's] Colorado probation officer and threatening to have [plaintiff] arrested if [he tried] to

gain custody in accordance with the current order." (Am. Compl. at 34, ¶ 10.) Plaintiff claims that he was later refused permission to travel.

On July 18, 2016, plaintiff initiated this civil action. His amended complaint indicates that he intends to raise claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 18 U.S.C. § 242. He primarily seeks compensatory and punitive damages.

## II.    STANDARD OF REVIEW

As plaintiff is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which require the Court to dismiss the amended complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully," and is not satisfied by "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013). As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III.    DISCUSSION

### A.  Claims under 18 U.S.C. § 242

It appears that plaintiff intends to bring claims under 18 U.S.C. § 242, because he cites that statute in the amended complaint.  However, § 242 is a criminal statute that does not provide a basis for civil liability.  *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *Walthour v. Herron*, No. CIV.A.10-01495, 2010 WL 1877704, at *3 (E.D. Pa. May 6, 2010) (section 242 "do[es] not provide a private right of action under which Plaintiff may sue").  Accordingly, the Court will dismiss with prejudice any claims under 18 U.S.C. § 242 because they are legally frivolous.

### B.  Claims under 42 U.S.C. 1985(3)

The amended complaint also suggests that plaintiff seeks to bring claims under 42 U.S.C. § 1985(3).  "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct").  Although plaintiff generally alleges that the defendants have conspired against him, he does not allege the type of race or class based discrimination that is required to state a claim under § 1985(3).  Accordingly, the Court will dismiss his § 1985(3) claims.

### C.  Claims under  42 U.S.C. § 1983

#### 1.  The Philadelphia Court of Common Pleas is not Subject to Liability Under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). As explained in the Court's prior memorandum, the Philadelphia Court of Common Pleas is not a "person" subject to liability under § 1983 and, in any event, is entitled to Eleventh Amendment immunity from plaintiff's claims.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).  The Court will therefore dismiss with prejudice plaintiff's claims against the Philadelphia Court of Common Pleas because there is no legal basis for a § 1983 claim against that defendant.

#### 2.  DHS and the Philadelphia Police Dept. 8th District are not Entities Subject to Suit

Departments of the City of Philadelphia may not be sued separately from the City itself.  *See* 53 Pa. Cons. Stat. § 16257.  As DHS and the Philadelphia Police Department 8th District are therefore not suable entities, the Court will dismiss the claims against them with prejudice.

#### 3.  The Majority of Plaintiff's § 1983 Claims are Untimely

The allegations of the amended complaint confirm that the vast majority of plaintiff's claims are time-barred.  Pennsylvania's two-year statute of limitations applies to plaintiff's claims.  *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  The limitations period generally begins to run from the time "the plaintiff knew or should have known of the injury upon which [his] action is based."  *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Plaintiff filed suit on July 18, 2016.  However, most of the events of which he complains occurred in the course of litigating the support proceeding in the Philadelphia courts between 2004 and 2011, before plaintiff reconciled with Ms. Fake in 2012.  During that 2012 reconciliation, plaintiff alleges that he "discovered much disturbing information about the corruption and Murphy's role in the past events."  (Am. Compl. at 21.)  In light of that allegation, plaintiff's prior knowledge of Ms. Fake's history with the Murphy family, and the seven years of litigation history in the Philadelphia courts, plaintiff knew or should have known of the basis for his conspiracy claims by 2012 at the latest.  Accordingly, he may not recover for conduct that occurred prior to July 18, 2014 related to the alleged conspiracy to rig the domestic relations proceeding against him and in favor of Ms. Fake.[1]  *See Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993) ("[P]laintiffs were required to seek redress for each act of the alleged conspiracy causing injury within two years of its occurrence."); *Anders v. Bucks Cnty.*, No. CIV.A. 13-5517, 2014 WL 1924114, at *4 (E.D. Pa. May 12, 2014) ("If the plaintiff's claims are based on discrete acts which give rise to causes of action that can be brought individually, then the continuing violations doctrine does not serve to extend the applicable statute of limitations periods.").  The Court will dismiss the time-barred claims with prejudice.

### 4.  Plaintiff Has not Pled a Plausible Conspiracy Claim

Even if plaintiff's claims were not time-barred, they fail because he has failed to plead a plausible basis for a conspiracy.  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of

---

[1] To the extent plaintiff raises claims—apart from the conspiracy claim—based on his arrest and detention, the seizure of his license or other belongings, how he was treated by police during his arrests, or other alleged constitutional violations that occurred prior to July 18, 2014, those claims are also time-barred.

conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (per curiam) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)). Furthermore, to state a claim against a given defendant, the complaint must provide sufficient factual matter from which the Court could plausibly infer that the defendant was personally involved in the violation of plaintiff's constitutional rights. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

In *Great Western*, plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 alleging that the defendants conspired to deprive it of due process in connection with an arbitration proceeding. 615 F.3d at 162. Great Western's predecessor-in-interest had agreed to arbitrate the underlying dispute before Thomas Rutter and Rutter's company, ADR Options, which employed many former state and federal judges as arbitrators. The result of the arbitration was an award for the opposing party, who was represented by an attorney from Fox Rothschild. Great Western filed a petition to vacate the award in the Pennsylvania courts based on an alleged failure to disclose potential conflicts of interests between Rutter and his company on the one hand, and attorneys from Fox Rothschild on the other. The petition was unsuccessful. Great Western subsequently filed a civil action in the Pennsylvania courts against Rutter, ADR Options, the attorney for the prevailing party and Fox Rothschild, claiming that an allegedly improper relationship among the defendants corrupted the arbitration. That lawsuit was also unsuccessful.

In the federal suit against the same defendants, Great Western alleged "that the Pennsylvania state-court decisions were corrupted by the improper influence of Defendants, arising both from

the Pennsylvania courts' reliance on Rutter's services and from Pennsylvania judges' prospect of future employment with ADR Options." *Id.* In the course of attempting to amend the complaint, plaintiffs included the fact "that some of the judges who had ruled against Great Western and for ADR Options had already approached Rutter regarding the prospect of employment upon leaving the bench." *Id.* at 163.

After reviewing all of Great Western's pleadings and disregarding conclusory allegations, the Third Circuit concluded that Great Western failed to state a plausible basis for a conspiracy under § 1983 despite factual allegations such as (1) a statement was made to that there was "no way that a Philadelphia court is ever going to find against Thomas Rutter given his relationship with the Philadelphia court system"; (2) ADR Options employed many former judges and paid them well; and (3) some of the judges who ruled against Great Western in state court had already approached Rutter about future employment. *Id.* at 178. The Third Circuit concluded that:

> Great Western has not pleaded any facts that plausibly suggest a meeting of the minds between Rutter and members of the Pennsylvania judiciary. *See Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (holding that a plaintiff claiming conspiracy must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement"). The complaint sets forth merely a "conclusory allegation of agreement at some unidentified point[, which] does not supply facts adequate to show illegality." *Id.* at 557, 127 S.Ct. 1955. Specifically, Great Western has failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, or the object of the conspiracy. *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir.1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

*Id.* at 179.

As in *Great Western*, plaintiff's allegations of conspiracy do not state a claim. The Court must disregard any conclusory allegations, such as plaintiff's allegation that the defendants

engaged in a "criminal conspiracy to deprive [him] of civil rights," discriminated and retaliated against him, or generally deprived him of due process.  (Am. Compl. at 2.)  The factual allegations that plaintiff relies on to state his conspiracy claim are: (1) the fact the Murphy family, and Under Secretary Murphy in particular, was close with Dianne Fake and had personal ties to judges and other government employees; (2) a statement that John Clark made at a wedding before 2004 regarding a groom marrying into the Murphy family that the groom "better hope that they never get a divorce" (*Id.* at 4); (3) that "[t]he name Murphy was mentioned" in a conversation plaintiff overheard between special masters after a 2005 hearing in the support action (*Id.* at 8); (4) the fact that he saw Under Secretary Murphy talking in the hallway to Judge Dougherty in the courthouse in 2006 after he had been arrested; (5) the fact that several state judges ruled against him throughout the support proceeding in Philadelphia from 2004 through 2016, and allegedly treated him unfairly and/or violated his rights in connection with their rulings and scheduling decisions; (6) his discovery of "much disturbing information about the corruption and Murphy's role in the past events" after reconciling with his ex-wife in 2012, (*Id.* at 21); and (7) his dissatisfaction with how DHS employees handled his complaints regarding his children.

Those allegations do not set forth a plausible basis for concluding that Under Secretary Murphy or anyone else influenced how the Philadelphia courts or other City agencies interacted with plaintiff.  That the Murphy family was both well-connected and close with Ms. Fake and her family does not support an inference that plaintiff's losses in the domestic relations proceeding were a product of a conspiracy, absent specific allegations concerning details of a conspiratorial agreement.  However, the statements that plaintiff relies on to bolster his conspiracy claims—i.e., that he overheard the special masters mention the name Murphy or that

he learned of "corruption" and Murphy's alleged "role" in "past events"—are vague and conclusory.  They do not specify where, when and with whom any members of the Murphy family conspired to rig the Philadelphia courts in favor of Ms. Fake.  Plaintiff has utterly "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, or the object of the conspiracy." *Great Western*, 615 F.3d at 179.  It is also insufficient that plaintiff happened to see Under Secretary Murphy conversing with Judge Dougherty at the courthouse on an occasion when he was arrested.[2]  *See Capogrosso*, 588 F.3d at 185 (rejecting conspiracy claim based on allegation "that Judge Fast interacted with Judge Iglesias after presumably hearing [plaintiff] discuss her case in a hallway, and that Judge Iglesias' subsequent adverse ruling [in plaintiff's case, which accused Judge Fast of criminal conduct] gives rise to an inference of conspiratorial conduct").

   Plaintiff's allegations are particularly deficient to support the existence of a conspiracy with respect to conduct that occurred within the limitations period.[3]  The amended complaint does not provide a factual basis for concluding that the judges or special masters who presided over the support matter in recent years agreed to partake in any conspiracy against plaintiff.  The same is

---

[2] It appears that Judge Dougherty was not even the judge presiding over the support case at that time and plaintiff had not yet contacted him about the matter.  (*See* Am. Compl. at 12, 16 & 20 (indicating that Judge Johnson was presiding over plaintiff's case at the time he saw Judge Dougherty in May of 2006, and that plaintiff contacted Judge Dougherty about his case in March of 2007 and February of 2008).)

[3] Given the absence of factual allegations supporting the existence of a conspiracy, there is also no basis for concluding that Dianne Fake or other private actors could be considered state actors who would be subject to liability under § 1983.  *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) ("[W]e have explained that the principal question at stake [in determining whether a private actor can be considered to have acted under color of state law] is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." (quotations and alteration omitted)).

true for individuals at DHS and the Philadelphia Police Department.  Even if plaintiff could

establish that a conspiracy existed when Ms. Fake initially filed the support action in

Philadelphia, he has not provided any support for his suggestion that the conspiracy continued

during the past two years, that additional judges joined the conspiracy, or that the conspiracy

somehow spread to the DHS or the Philadelphia Police Department.  In any event, the judges and

special masters who presided over the support and/or custody matter in recent years are entitled

to absolute judicial immunity from plaintiff's claims because those claims are based on acts they

took in their judicial capacity while presiding over plaintiff's case.[4]  *See Stump v. Sparkman*, 435

U.S. 349, 356-57 (1978); *see also Hughes v. Long*, 242 F.3d 121, 126-27 (3d Cir. 2001) (court-

appointed custody evaluator, who functioned as "arm of the court" and offered recommendation

to the court based on fact finding in order to "aid and inform the family court," was entitled to

absolute judicial immunity).

### 5. Plaintiff Has Not Stated a Claim Based on Local Agencies' Alleged Failures in Handling His Allegations of Child Abuse

Plaintiff's claims concerning City employees' allegedly insufficient responses to his reports

of child abuse do not state a claim.  First, as the Court explained in dismissing the initial

complaint, plaintiff lacks standing to pursue claims based on any harm suffered by his children.

*See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A]

plaintiff must assert his or her own legal interests rather than those of a third party" to have

standing to bring a claim (quotations omitted)).  Second, a failure to investigate does not amount

---

[4] Plaintiff's timely claims premised on events that occurred in the domestic relations proceeding
all appear to be based on how judges, special masters or judicial staff handled his case or
addressed him in court.  Pennsylvania courts generally have jurisdiction over domestic relations
proceedings, including support and child custody matters, *see* 23 Pa. Cons. Stat. § 3104, and the
judges and special masters were engaged in judicial acts while presiding over and making rulings
in plaintiff's case.  Plaintiff's bald legal conclusion that the Philadelphia court lacked jurisdiction
or venue over the matter does not establish a plausible basis for vitiating judicial immunity here.

to a constitutional violation.  *See Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)).  Third, plaintiff has not alleged sufficient facts to support his bald allegations that he has been the victim of "discrimination" or "corruption" in connection with how his allegations of child abuse were handled by local authorities.  Finally, to the extent plaintiff sought records from DHS or other government entities, it is unclear what records he sought or how a failure to provide those records violates plaintiff's constitutional or federal rights.

### 6.  Plaintiff Has Not Stated a Claim Based on His Recent Probation Condition

The only remaining allegation is plaintiff's contention that his ex-wife conspired with Officer Marafino, who contacted plaintiff's probation officer in Colorado about custody issues stemming from the domestic relations proceeding.  As with his other conspiracy claims, plaintiff has not alleged any facts to support the alleged conspiracy between the police officer and his ex-wife beyond a general implication that Dianne Fake's close relationship with the Murphy family provides her with the ability to unfairly influence state and local agencies.  Furthermore, plaintiff's undeveloped allegation, which he does not clearly tie to the probation condition he challenges, does not support a plausible constitutional claim against Officer Marafino.

### IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the amended complaint.  In an abundance of caution, the Court will give plaintiff leave to file a second amended complaint in the event it is

possible for him to state a timely claim against a proper defendant who is not entitled to immunity.  An appropriate order follows.

_**/s/ Gerald J. Pappert**_